IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



WESLEY DOYLE PAYNE,

    Plaintiff,

v.                                                 Civil No. 2:08cv119

WYETH PHARMACEUTICALS, INC.,

    Defendant.

## OPINION AND ORDER

Plaintiff, Wesley Doyle Payne ("Payne"), brings this negligence action against Defendant, Wyeth Pharmaceuticals, Inc. ("Wyeth Pharmaceuticals"), alleging that Wyeth Pharmaceuticals is vicariously liable for an automobile accident in which Payne was injured. Plaintiff seeks $25,000,000 in compensatory damages. Presently before the Court is Wyeth Pharmaceuticals' Motion In Limine To Exclude Plaintiff's Medical Bills. After considering the motion, counsel's accompanying memoranda,[1] and oral arguments before the Court on October 29, 2008, and for the reasons set forth herein, the Court GRANTS Wyeth Pharmaceuticals' Motion In Limine to

---

[1] The accompanying memoranda include Wyeth Pharmaceuticals Inc's Memorandum In Support of Motion in Limine to Exclude Plaintiff's Medical Bills ("Def.'s Mem. Supp."), Plaintiff's Memorandum in Opposition To Wyeth Pharmaceutical's Motion In Limine To Exclude Medical Bills ("Pl.'s Mem. Opp'n"), and Wyeth Pharmaceuticals Inc's Reply In Support Of Its Motion In Limine to Exclude Plaintiff's Medical Bills ("Def.'s Reply").

Exclude Plaintiff's Medical Bills.

## I. **Facts and Procedural History**

Payne's Complaint alleges that on or about January 8, 2007, Wyeth Pharmaceuticals' employee, Michael Charles Romano, negligently drove his automobile into Payne's automobile. Compl. ¶¶ 5-6. Payne allegedly was seriously injured, suffering, among other things, a severe brain injury that has left him permanently impaired. Compl. ¶ 8. Payne has received treatment since the accident from various medical providers. See Pl.'s Mem. Opp'n Ex. 4 (listing various medical bills incurred by Payne). Payne brought this diversity action against Wyeth Pharmaceuticals on March 10, 2008, seeking compensatory damages.

On October 8, 2007, Payne filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Virginia. See In re Wesley Doyle Payne, No. 07-72297-FJS (Bankr. E.D. Va.). Payne filed a set of schedules with the bankruptcy court detailing his assets and liabilities pursuant to 11 U.S.C. § 521(a)(1)(B)(1).[2] In Schedule F, "CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS," Payne specifically lists his pre-bankruptcy petition medical bills. See Def.'s Mem. Supp. Ex. B. Schedule F lists $19,736.00 as "medical

---

[2] The Court notes that Payne filed an amended petition for bankruptcy, which included an amended set of schedules, on January 11, 2008. All references herein are to the amended petition and amended schedules.

2

bills."[3] Id. Wyeth Pharmaceutical alleges that Payne only listed some, but not all, of his pre-bankruptcy petition medical bills. See Def.'s Mem. Supp. 2. Specifically, Wyeth Pharmaceuticals alleges that Payne did not list $21,483.87 in medical expenses incurred prior to filing the bankruptcy petition. Id. The bankruptcy court discharged Payne's debt on April 7, 2008, In re Wesley Doyle Payne, No. 07-72297-FJS (Bankr. E.D. Va.), almost one month after the instant lawsuit was filed.

Payne intends to introduce his medical bills—including the medical bills discharged in bankruptcy—into evidence at trial. Pl.'s Mem. Opp'n 2. On October 3, 2008, Wyeth Pharmaceuticals moved this Court in limine to exclude Payne's medical bills that were discharged in bankruptcy because, Wyeth Pharmaceuticals argues, Virginia's collateral source rule does not apply to bankruptcy discharges. Wyeth Pharmaceuticals also argues that all of Payne's medical bills should be inadmissible to prove pain and suffering damages because the medical bills are not relevant to prove pain and suffering. Payne argues, in turn, that Virginia's collateral source rule applies to bankruptcy discharges, and,

---

[3] Payne argues that the amounts of certain entries in Schedule F do not accurately reflect the correct amount of discharged debt either because Payne paid part of the medical bills prior to discharge or because the amount in the actual medical bills was different from the amount listed in the schedule. See Pl.'s Mem. Opp'n 2-3 nn. 3-9. This distinction, however, is not relevant to the disposition of the instant motion.

therefore, the Court should deny Wyeth Pharmaceuticals' motion.[4]

## II. **DISCUSSION**

### A. ADMISSIBILITY TO PROVE SPECIAL DAMAGES

Wyeth Pharmaceuticals argues that Payne's medical bills that were discharged in bankruptcy cannot be introduced into evidence to prove special damages because Virginia's collateral source rule does not apply to bankruptcy discharges. Payne argues, in turn, that the collateral source rule applies to bankruptcy discharges.

#### i. The Collateral Source Rule as Virginia State Law

Generally, federal courts sitting in diversity apply state substantive law and federal procedural law. See, e.g., Erie R.R. v. Tompkins, 304 U.S. 64 (1938); Hottle v. Beech Aircraft Corp., 47 F.3d 106, 109-10 (4th Cir. 1995). However, "'there are circumstances in which a question of admissibility of evidence is so intertwined with a state substantive rule that the state rule . . . will be followed in order to give full effect to the state's substantive policy.'" Hottle, 47 F.3d at 110 (quoting DiAntonio v. Northampton-Accomack Memorial Hosp., 628 F.2d 287, 291 (4th Cir. 1980). "The application of the collateral source doctrine, while an evidentiary rule, is closely tied to state substantive policy, and thus is governed here by Virginia law." Mitchell v. Hayes, 72

---

[4] Payne further argues that the Court should enter an order prohibiting Wyeth Pharmaceuticals from mentioning any matters set forth in the instant memoranda because discharging debt in bankruptcy is irrelevant to the instant case. The Court has disposed of that issue in a separate ruling.

4

F. Supp. 2d 635, 636-37 (W.D. Va. 1999) (citing Hottle, 47 F.3d at 110).

The Supreme Court of Virginia has expressly declined to rule upon the issue of whether the collateral source rule applies to allow the introduction of evidence of medical bills when those medical bills have been discharged in bankruptcy. Barkley v. Wallace, 595 S.E.2d 271, 273 (Va. 2004) ("Thus, we are not presented with and do not decide the question whether evidence of medical bills is admissible to recover the amount charged for such treatment when a plaintiff has obtained a discharge of those medical bills in bankruptcy proceedings."). Virginia Circuit Courts have split on the issue. A substantial majority of these courts have held that the collateral source rule does not apply to medical bills that have been discharged in bankruptcy. See, e.g., Choice v. Kruse, 57 Va. Cir. 13 (Va. Cir. Ct. 2001); Daniels v. Owens, 54 Va. Cir. 284 (Va. Cir. Ct. 2000); Morganthal v. Piper, 38 Va. Cir. 354 (Va. Cir. Ct. 1996); Walker v. Long, 57 Va. Cir. 419 (Va. Cir. Ct. 1993). Only one case has held to the contrary. See Dodd v. Lang, 71 Va. Cir. 235 (Va. Cir. Ct. 2006). The issue is also one of first impression in the Fourth Circuit.[5]

As a federal court sitting in diversity, the Court must

---

[5] One district court in this Circuit has held that Virginia's collateral source rule applies to debts discharged in bankruptcy. See Hall v. Wal-Mart Stores, Inc., No. 4:05cv50 (W.D. Va. Apr. 25, 2006) (order granting motion in limine). That court, however, did not provide any written analysis in support of its holding.

5

predict how the state's highest court would resolve the issue when that court has not yet spoken on the issue. See Liberty Mut. Ins. Co. v. Triangle Industries, Inc., 957 F.2d 1153, 1156 (4th Cir. 1992). In predicting the decision of the state's highest court, this Court may consider, inter alia, decisions of lower state courts, canons of construction, restatements of the law, and "recent pronouncements of general rules or policies by the state's highest court." Id. For the reasons that follow, this Court holds that, pursuant to Virginia law, the collateral source rule does not apply to medical bills that have been discharged in bankruptcy and concludes that the Virginia Supreme Court would hold the same.

## ii. The Collateral Source Rule

The collateral source rule is a "long-standing principle in Virginia tort law" and provides that "'compensation or indemnity received by a tort victim from a source collateral to the tortfeasor may not be applied as a credit against the quantum of damages the tortfeasor owes.'" Acuar v. Letourneau, 531 S.E.2d 316, 320 (Va. 2000) (quoting Schickling v. Aspinall, 369 S.E.2d 172, 174 (Va. 1988)). "A person who is negligent and injures another owes to the latter full compensation for the injury inflicted, and payment for such injury from a collateral source in no way relieves the wrongdoer of the obligation." Id. (quotation omitted). In addition to "payments" and "indemnities," the Supreme Court of Virginia has also characterized the rule as including

6

"benefits" from a collateral source. See id. at 322 ("Rather, [the focal point of the rule] is whether a tort victim has received benefits from a collateral source . . . ."). As such, the collateral source rule applies to insurance payments, "social security benefits, public and private pension payments, unemployment and workers' compensation benefits, vacation and sick leave allowances, and other payments made by employers to injured employees, both contractual and gratuitous." Schickling, 369 S.E.2d at 174. The Supreme Court of Virginia has also held the rule to apply to medical bills that a plaintiff's health care providers wrote off. Acuar, 531 S.E.2d at 323.

### iii. Plain Meaning

The plain meaning of the collateral source rule favors not applying the rule to debts discharged in bankruptcy.

The very term "collateral source" implies the existence of a third party. Cf. Choice, 57 Va. Cir. at 13 ("First, as the Supreme Court [of Virginia] has stated, the focal point of the rule is that the plaintiff received benefits, e.g. compensation, indemnity or write off, from a third party."). "This rule historically has been applied in the situation where a third party, such as an insurer, employer, family member, etc., acts on the plaintiff's behalf. In the bankruptcy situation, however, no third party as such benefits the plaintiff." Id.; see also Oliver v. Heritage Mutual Insurance Company, 505 N.W.2d 452, 461 (Wis. 1993) (holding that, pursuant to

7

Wisconsin law, the Wisconsin collateral source rule does not apply to bankruptcy discharges because there is no third party in a bankruptcy discharge). On the contrary, debts discharged in bankruptcy are unrecoverable by operation of law. See 11 U.S.C. § 524(a)(2).

That the rule references "payments" and "benefits" further buttresses this point. Cf. Walker, 57 Va. Cir. at 419 (noting that "the very term 'collateral source' implies a source of payment"). Even the one Virginia Circuit Court to hold that the collateral source rule applies to bankruptcy discharges admitted that "a bankruptcy is not, by definition, a 'collateral source,' since there is no collateral payment." Dodd, 71 Va. Cir. at 235.

### iv. Purpose and Public Policy

The purpose of the collateral source rule and public policy also favor not applying the rule to debts discharged in bankruptcy.

As the Supreme Court of Virginia has stated:

> The collateral source rule is designed to strike a balance between two competing principles of tort law: (1) a plaintiff is entitled to compensation sufficient to make him whole, but no more; and (2) a defendant is liable for all damages that proximately result from his wrong. A plaintiff who receives a double recovery for a single tort enjoys a windfall; a defendant who escapes, in whole or in part, liability for his wrong enjoys a windfall. Because the law must sanction one windfall and deny the other, it favors the victim of the wrong rather than the wrongdoer.

Schickling, 369 S.E.2d at 174; see also Acuar, 531 S.E.2d at 322 (noting the "fundamental purpose of the rule" is "to prevent a

8

tortfeasor from deriving any benefit from compensation or indemnity that an injured party has received from a collateral source"). Normally, therefore, equity favors the innocent injured party over the tortfeasor.

This equitable balance, however, is upset in the bankruptcy context. Where the collateral source rule has traditionally been applied—in the insurance and governmental benefits contexts, for instance—the collateral source has previously agreed to provide compensation in the event of an injury. The collateral source rule therefore encourages people to obtain insurance. The rule also provides for governmental benefits to be fully appreciated because to do otherwise would be to punish those the government wished to help. Cf. Wills v. Foster, 892 N.E.2d 1018, 1026-27, 1030-31 (Ill. 2008) (arguing that not applying the collateral source rule to Medicaid beneficiaries improperly discriminates against the poor and disabled). Thus, important public policies are generally furthered when the collateral source rule is applied: insurance coverage is promoted and governmental regulatory regimes like worker's compensation, Medicare, Medicaid, and Social Security are fully effectuated. The thrust of the collateral source rule is to reward plaintiff's favored status prior to injury. Cf. Walker, 57 Va. Cir. at 419 (arguing that, under the collateral source rule, plaintiff's windfall results from "plaintiff's status at the time of the accident or treatment," and not "from an act of plaintiff

taken after treatment was rendered"); see also Restatement (Second) of Torts § 920 cmt. B (1979) ("If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance or by making advantageous employment arrangements, the law allows him to keep it for himself.").

Applying the collateral source rule to debts discharged in bankruptcy would not result in the same equitable balance. First, applying the collateral source rule to debts discharged in bankruptcy may encourage bankruptcies. E.g., Walker, 57 Va. Cir. at 419 (arguing that applying the collateral source rule in the bankruptcy context "might encourage some plaintiffs to declare bankruptcy so that payment intended for medical providers could be transferred to the plaintiff instead"); Choice, 57 Va. Cir. at 12 (adopting the Walker court's reasoning). Such a tendency would be "poor public policy." Id.; see also Oliver, 505 N.W.2d at 462 ("It would be poor public policy to encourage bankruptcies for this purpose."); Olariu v. Marrero, 549 S.E.2d 121, 124 (Ga. Ct. App. 2001) ("The second reason for not extending the collateral source rule is that to hold otherwise might encourage bankruptcy, which is not consistent with public policy.").

Second, allowing the collateral source rule to apply to an act by a plaintiff taken after the injury leads to other potential hazards. After an injury occurs, the injured party may intend to bring a lawsuit to recover for his injuries. That potential

10

lawsuit may thus be in mind when the future plaintiff files for bankruptcy protection. Indeed, damages from potential lawsuits are considered assets to be listed in a bankruptcy schedule pursuant to 11 U.S.C. § 521(a)(1)(B)(1). See generally In re Alphin, 1997 WL 33344251 (Bankr. D.S.C. Nov. 3, 1997) (acknowledging that a potential lawsuit is an asset pursuant to 11 U.S.C. § 521(a)(1)(B)(1)). A plaintiff therefore has a strong incentive to "low-ball" the value of a potential lawsuit on a bankruptcy petition to prevent his or her creditors from recovering from the damages resulting from the potential lawsuit.[6] When a plaintiff can thus take affirmative steps after the injury to ensure that there will be double recovery if he or she succeeds in the lawsuit, equity no longer favors a windfall for the plaintiff and the collateral source rule should not apply.

### v. Dodd v. Lang

This Court notes that the Virginia Circuit Court in Dodd v. Lang, 71 Va. Cir. 235 (Va. Cir. Ct. 2006), came to the opposite conclusion, finding that the collateral source rule applies to debts discharged in bankruptcy. The Court, however, believes that the Supreme Court of Virginia would agree with the holding in the instant case. First, Dodd worries that not applying the collateral source rule to debts discharged in bankruptcy would be unfair when

---

[6] In some situations, as here, the personal injury lawsuit was currently pending in this Court before disposition of Payne's bankruptcy petition.

11

the injury forced the injured party into bankruptcy. See id. That situation, however, does not appear to be before this Court. Second, and more importantly, Dodd notes that a court may impose a constructive trust upon damages a plaintiff recovers for discharged medical bills to ensure the damages are forwarded to the medical providers. See id. Such a result would run counter to ensuring the effectiveness of bankruptcy proceedings because all of a debtor's creditors are required to be listed in the set of schedules pursuant to 11 U.S.C. § 521(a)(1)(B)(1). It is for the bankruptcy court, not a state court, to determine in its proceedings the assets and liabilities of the debtor and the settlement of the claims of the creditors. If that resolution is to be adjusted or questioned, Congress has provided an adequate remedy in 11 U.S.C. § 350(b), which provides that the bankruptcy court may reopen the case. Cf. Hawkins v. Landmark Finance Co., 727 F.2d 324, 326 (4th Cir. 1984) (holding that it is within the discretion of the federal bankruptcy court to reopen a bankruptcy case).

### vi. Discharged Medical Bills

Wyeth Pharmaceuticals argues that all of Payne's pre-bankruptcy petition debts, whether listed in the petition or not, are discharged. "A discharge in bankruptcy relieves the debtor of personal liability for all pre-petition debts but those excepted under the Bankruptcy Code." In re Rosenfeld, 23 F.3d 833,

836 (4th Cir. 1994) (citing 11 U.S.C. § 727 (1993)). "Section 727(b) provides that discharge releases a debtor from personal liability for allowed claims and debts 'that arose before the date of the [discharge]' unless that debt is specifically excepted from discharge under 11 U.S.C. § 523." Horizon Aviation of Virginia, Inc. V. Alexander, 296 B.R. 380, 382 (Bankr. E.D. Va. 2003). Pre-petition debts that are not fraudulently incurred, whether listed in the schedules or not, are discharged pursuant to Section 727. Cf. id. (holding the same for Chapter 7 no-asset cases). Therefore, the Court holds that all of Payne's pre-bankruptcy amended petition medical bills, whether listed or not listed, are excluded from evidence to prove special damages.

B. ADMISSIBILITY TO PROVE PAIN AND SUFFERING DAMAGES

Wyeth Pharmaceuticals further argues that Payne cannot introduce any of his medical bills to prove pain and suffering damages because (1) the medical bills are not relevant to pain and suffering pursuant to Federal Rule of Evidence 401 and (2) even if the medical bills are relevant, the bills should nonetheless be excluded pursuant to Federal Rule of Evidence 403. Def.'s Mem. Supp. 8. Payne argued at the October 29, 2008 hearing that the medical bills are relevant to prove pain and suffering because they could corroborate the testimony of Payne and his doctors, should they testify at trial.

Federal Rule of Evidence 401 defines "relevant evidence" as

"evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." All relevant evidence is admissible unless otherwise prohibited; irrelevant evidence is inadmissible. Fed. R. Evid. 402. Neither this Court nor the Fourth Circuit has ruled whether medical bills are relevant to prove pain and suffering; therefore, the issue is one of first impression before the Court.

The Court holds that the medical bills are not relevant to pain and suffering. In reaching this conclusion, the Court is persuaded by the analysis of Carlson v. Bubash, 639 A.2d 458, 462 (Pa. Super. Ct. 1994).[7] As that court reasoned:

> It is immediately apparent that there is no logical or experiential correlation between the monetary value of medical services required to treat a given injury and the quantum of pain and suffering endured as a result of that injury. First, the mere dollar amount assigned to medical services masks the difference in severity between various types of injuries. A very painful injury may be untreatable, or, on the other hand, may require simpler and less costly treatment than a less painful one. The same disparity in treatment may exist between different but equally painful injuries. Second, given identical injuries, the method or extent of treatment sought by the patient or prescribed by the physician may vary from patient to patient and from physician to physician. Third, even where injury and treatment are identical, the reasonable value of that treatment may vary considerably depending upon the medical facility and community in

---

[7] While the Court notes that determining "relevance" pursuant to the Federal Rules of Evidence is a distinct legal analysis from determining "relevance" pursuant to Pennsylvania state law, the Court nevertheless finds the Carlson court's analysis instructive in determining "relevance" under federal law.

14

> which care is provided and the rates of physicians and other health care personnel involved. Finally, even given identical injuries, treatment and cost, the fact remains that pain is subjective and varies from individual to individual.

Id. Furthermore, "a single figure representing the total amount of an individual's medical bills does not demonstrate the number of times the person received treatment or the nature of the treatment." Barkley, 595 S.E.2d at 274-75 (Kinser, J., concurring in part and dissenting in part) ("In some instances, one noninvasive diagnostic test can cost as much as many visits to a physical therapist or chiropractor."). Therefore, the medical bills have no tendency to establish Payne's claim that he experienced pain and suffering as a result of the accident. The Court accordingly holds that the medical bills are inadmissible pursuant to Fed. R. Evid. 401 and 402.

Even if the Court were to conclude the medical bills are relevant and admissible, the medical bills are nevertheless inadmissible pursuant to Fed. R. Evid. 403. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Here, there is a substantial possibility of jury confusion if the medical bills were introduced to prove pain and suffering. The jury may be tempted to treat the

medical bills as recoverable special damages rather than to only assess the medical bills as evidence that Payne experienced pain and suffering. The jury may also be confused by the medical bills' characterization of the treatment Payne allegedly underwent because the treatment is described in the bills in summary, imprecise terms.[8] These ill-defined terms, presented right beside their cost in dollar figures, with little explanation to guide the jury, would unfairly prejudice Wyeth Pharmaceuticals. To cure this prejudice, and thus to clarify the meaning of the terms in the medical bills, Payne would likely have to call a witness from each medical office from which a bill was issued to testify regarding, among other things, the terms in the bill and whether a doctor or administrator labeled the procedures and treatments. Such a process could unduly delay the trial. Furthermore, introduction of the medical bills into evidence would be overly cumulative: whatever tendency they would have to prove pain and suffering may already be amply demonstrated by other, more probative evidence, such as the testimony of Payne and his doctors. On the other side of the scale, the medical bills are of limited probative value for many of the reasons discussed in the relevance analysis, <u>supra</u>. For all these reasons individually, and for all of them together, the Court

---

[8] For but one example of Payne's medical bills, see, e.g., Pl.'s Mem. Opp'n Ex. 4 at 33 (labeling various expenses as "THERAPEUTIC EXERCISES," "ELECTRICAL STIM/UNATTENDED," and "PT EVALUATION," among other things, with no further explanation).

16

holds that Payne's medical bills fail Rule 403 analysis and are therefore inadmissible to prove pain and suffering.

### III. CONCLUSION

For the foregoing reasons, the Court (1) holds that Payne's medical bills that were discharged in bankruptcy are inadmissible to prove the amounts charged because Virginia's collateral source rule does not apply to medical bills discharged in bankruptcy; (2) holds that Payne's unlisted pre-bankruptcy amended petition medical bills are inadmissible to prove the amounts charged; and (3) holds that Payne's medical bills are inadmissible to prove pain and suffering damages. Wyeth Pharmaceuticals' motion is therefore GRANTED.

IT IS SO ORDERED.

/s/ Bradford O. Stillman
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
November 12, 2008